The last case for argument, United States v. Hawkins, Ms. Jantz. Thank you, Judge. Good afternoon, and may it please the Court. Mr. Warfield's proffer statements here, that he robbed the bank with someone other than my client, was an example of classic and powerful exculpatory evidence. Ultimately, my client was convicted of the bank robbery and was sentenced to 100 months, and the jury never got to hear this statement of Mr. Warfield, that he robbed the bank with someone other than Mr. Hawkins. Our appeal issue is that the district judge abused her discretion by keeping that statement from the jury. And she did that on the primary basis that those statements were at odds with the evidence that the government expected to elicit at the trial. And we don't dispute here that there was conflicting evidence. That's why Mr. Hawkins was indicted in the first place. That's why we were having a trial. Our claim here is that the legal error came in based on the judge's methodology, that she relied too heavily on the trial evidence, and in that regard was actually testing whether or not the statements were true. And that's not the statement under 804b3, or certainly not as this Court has explained in Garcia. In Garcia, which we've cited in our briefs, the district court must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination concerning the truth of those statements. And so the proper methodology here would have been to look at the context under which the statements were made, and that's what the judge referred to as the Naguib factors. Naguib is another opinion of this Court that we've cited in our briefs, as well as any other corroboration. And we had laid out to the district court in our motion limine why those statements met that test for corroboration. Specifically, we're not challenging any of the district judge's factual findings here. We're taking all of her factual findings as true and not challenging any of them. And indeed, before the judge actually got to her analysis of the trial evidence, she had found that there was some corroboration for those statements, but she ultimately concluded that the trial evidence undercut that corroboration, and that's where we think she made an error of law in her methodology. And so the government, we believe, is incorrect in stating in its response brief here that there was no corroboration. In fact, we presented it to the district court, and in fact, she accepted it. She just found that the trial evidence undercut it. What was that corroboration? Six main things. One, Mr. Warfield was acting against his own self-interest when he made these statements to the government. Why is that? Well, he's put himself sideways with the government's position, and that's certainly not something you want to do in a proffer session with the government. But more than that, he was exposing himself to further criminal liability. He could have had his sentence aggravated based on his statements that he had lied to law enforcement in his post-arrest statement, that he had had a plan to pin this on the patsy Scott Hawkins. And so for all those reasons, it was really against his self-interest to have made these statements, unless, of course, they were true. Was the evidence against Hawkins overwhelming? Judge, I would agree that it was challenging. I don't think it was overwhelming. No, I think it was overwhelming. Okay. Well, I have two responses, and I certainly understand your point. When you read the facts here, they are challenging. Two points, though. That's a jury question. And so we think that the admission of this statement by the other admitted robber, that he robbed a bank with someone other than my client, would have been very powerful in our defense. And we've cited to a case in our reply brief, Peek, which says that when you've excluded perhaps the only or sole evidence of a defense, you can assume that that would have had a substantial effect on the jury. And that may be how you see the case here, but we think that still gets us away from the harmless error problem, to which I think Your Honor was referring. Ms. Chance, could I ask you, part of the concern I have here is, first, if you had prevailed on the district court to get the Warfield statement in, wouldn't that also imply that his much more detailed post-arrest confession would also become admissible? And a related point, given the conflict between what Warfield said at the time of arrest and in the proffer statement with those conflicts, this case looks a lot like U.S. against Jackson or U.S. against, I think it's Groche, G-R-O-C-E, which is cited in Jackson, where we upheld on that basis district court decisions to exclude such statements. And Judge, I'll take each of your questions in turn. Starting with the post-arrest question, yes, I agree that if his proffer statements come in, his post-arrest also comes in, although it would have to be sanitized for brute and confrontation issues. And the prosecutor and myself actually had this discussion with the district judge. How can you sanitize it? Because for it to be relevant, it's got to be what it says about Calkins, right? Our discussion at that time, and I think this is the correct outcome, is that you'd have to exclude Calkins' name from the post-arrest and say that he admitted after his arrest that he robbed the bank with someone different than who he's saying now to avoid the brute and issue. And I do think that that would be the proper result. Otherwise, I do think you'd have a brute and issue here.  But it goes right to the heart of the reliability of Warfield's statement, right? And I think that that gets to your second part of your question, correct, Judge, about the conflicting? Yes. And so Jackson, I think, is distinguishable in the sense that in that case, and that was in front of Judge Castillo, Judge Castillo said he would have to find a lot of corroborating evidence because the declarant in that case had made several statements to him under oath that were conflicting. And that's different than our case. Not by a whole lot. What was the brute and issue? The brute and issue is that you couldn't put in Mr. Warfield's post-arrest that he robbed the bank with Mr. Hawkins without him being available for confrontation. So you would tell the jury, you'd give him Warfield's statement accusing Stank or Brooks, right? And you'd tell the jury he made a different statement at the time of his arrest blaming Mr. X when the lawyers and the judge and everybody except the jury knows that Mr. X is, in fact, the defendant.  of the exculpatory statement without the inculpatory statement. That's a terrible manipulation. That's terrible. Well, we think we've seen this. Look, all that goes on here with all this evidence against him is you're going to just throw in a little monkey, right? You're going to confuse the jury with a proffer statement. It doesn't add anything. Just confusion. Well, I disagree, Judge. I think it adds a lot when you have the very person who robbed the bank saying that he robbed it with someone else. I'll reserve the rest of my time for rebuttal, Your Honor. Okay, that's fine. Mr. Madden. Thank you, Your Honor. May it please the court, Matthew Madden on behalf of the United States. Your Honor, this court should affirm the district court in this case. The criticism here by the defense is that with the district court's methodology, and there was absolutely no problem with the judge's methodology in assessing this hearsay evidence, what they're criticizing is the district court for considering anticipated trial evidence as opposed to the circumstances under which the statement was made or those corroborating circumstances. In this case, the very important circumstance that has been brushed aside by the defense is that this brief proffer statement during which the defendant, Warfield, pointed the finger at Stank, James Brooks, was directly contradicted by his lengthy, fulsome post-arrest statement on the day of the bank robbery and the day of his arrest. And so where that leaves you is it's entirely logical and makes sense to then look at which of those statements is corroborated because that raises all sorts of hearsay concerns if that statement is just going to come in briefly by the testimony of a law enforcement officer that was present for the proffer. And in this case, that anticipated trial evidence that the defense is criticizing Judge Sainee for considering was largely uncontested. It was the DNA evidence, the fact that Hawkins' DNA was on the hat that looked just like the hat worn by the robber in the bank video. It was the amount of money on Hawkins at that time, $2,001, when one of the tellers dispensed exactly $2,000 to one of the robber, and the fact it was to the robber that was wearing that, looked like that hat that had Hawkins' DNA on it. It was also supported by the testimony of the man who worked for Liberty Tax Services in a Statue of Liberty costume who ID'd both Hawkins and Warfield from photo arrays on the day of the arrest after they had walked right past him on their way into the bank and run past him on their way out. So all of that corroboration was largely uncontested, and it was anticipated trial evidence, and that corroboration corroborated the lengthy post-arrest statement of Warfield on the day of the robbery, and it completely undercut that brief statement by him in our offices downstairs, which, by the way, as you can tell from the report, was a very brief proffer cut off by the defense attorney very shortly after he said, yeah, I robbed the bank, but I robbed it with James Brooks, a.k.a. Stank. There was a little bit more detail. The defense attorney asked for a break, stopped the proffer. Nothing else happens. So that was the circumstance of that. Mr. Madden, is there any limit, as you see it, to the extent to which the judge can kind of conduct a mini-trial in evaluating the credibility or corroboration of an 804B3 statement in a criminal case? I think that there have to be some limits, Your Honor. Help. What do you think they are? Help. Ms. Jantz, same question. I know you think there ought to be a lot more limits, but I'm not sure exactly what they are. I don't think that we're testing the limits in this case. I'm trying to think. I mean, so in this case, the amount of money that was recovered, if I recall correctly, that was a subject of a stipulation, for example. So that's the type of thing that obviously is, I think, at least issues that are not in dispute by the parties can fairly be, trial evidence that's not in dispute by the parties can fairly be considered. What about an eyewitness ID? I think that's tougher just because it could be contested. Lab results? Lab results, the DNA, there was no stipulation on the DNA, but as it turned out at trial, it really wasn't. The defense decided not to challenge that. I mean, maybe what district court judges could do is, when you're faced with something like this, is just to try and see what the defense is going to be at trial and see what is going to be contested and rely more on the evidence that the defense is willing to say that we're going to agree to certain pieces of evidence. Well, from the district court standpoint, there's an awful lot of benefit from getting this aired out ahead of trial, even if it's not a final decision at that point. Mr. Madden, you've argued that this ought to be treated as harmless error, and the concern I have about that is we would reach that issue only if we agreed that there was enough corroboration here to find that the district judge abused her discretion in keeping it out. That's a hard gymnastic feat for me to achieve, to say that this has got enough corroboration that a district judge abused her discretion by keeping it out, exculpatory evidence that says the defendant, the accused in this case, had nothing to do with this robbery, but keeping it out was harmless. It is. Obviously, it's an alternative argument. Even if it had come in, as you mentioned during the defense argument here, it would have come in through an agent testifying about the brief proffer. And I agree also. We just had preliminary discussions about how that would look, and then if it had come in... On the Bruden problem, you mean? Well, the Bruden problem. But we agreed that the post-arrest statement would have to come in also. So it would come in, and the jury would also hear that on the day of the arrest we've got this lengthy post-arrest statement. I actually don't recall the discussion about sanitizing that statement. I do recall preliminary discussions that we agreed that the post-arrest statement should come in, but we never ended up addressing it in full because of the way the court ruled. So if we're thinking about what would have happened if this came in at trial, we have to also consider that this lengthy post-arrest statement where he's describing everything that happened that day, the two of them being together, how they robbed the bank, and then what happens afterwards is all going to come in as well. So the jury's going to hear that. The jury hears that statement, and then the jury also has all the other evidence that we talked about linking Hawkins to the robbery, plus the fact that James Brooks is never there. We weren't able to develop... There was no alibi evidence for Brooks, but all the evidence was that he was not present with Lester Warfield before or after the robbery. He was not there that day. And everyone who testified and all the evidence was that those guys were together, and they were arrested together just 30 minutes after the robbery with almost the exact amount of money on them. If I could just make one more point on the first issue in terms of the circumstances in response to Ms. Jantz's point about him not being under oath. Because in this case, we had that brief proffer statement at the U.S. Attorney's Office, but then what came after that was the change of plea. And at that point, that's where Lester Warfield was under oath. It's a different context to be in open court under oath saying this than to just make this brief statement at the U.S. Attorney's Office. And when he was under oath in front of the district court judge, he refused at his change of plea to name the second robber. And that was the subject of some dispute. He could have easily said at that time, of course, James Brooks, a.k.a. Stank, was the second robber. He absolutely refused to say it. And at that time, I think he understood, or his lawyer explained it, there's a much greater chance of being prosecuted for perjury or having an obstruction of justice finding or a lack of acceptance of responsibility finding if you stayed in open court under oath that James Brooks was the second robber when he really wasn't. So that's another circumstance that's present in this case. That's also something that Judge St. Eve relied upon in her written order when she decided to exclude this evidence. If there are no further questions, I'd ask that this court affirm the district court's exclusion of this potential hearsay statement by a non-testifying co-defendant. Okay, thank you very much, Mr. Madden. So, Ms. Jantz, do you have anything further? Thank you, Judge. I'll start with Judge Hamilton's question. And I believe if I understood correctly, are there any limits on what can be considered when the judge is looking at whether or not these corroborated? Do I have that correctly? I'll assume I do. So I don't think that there are any bright-line rules in the cases here. I think the closest that comes to telling or describing for a district judge what they can and can't consider is in the Garcia case that we've quoted extensively in our briefs. And basically, the Garcia case says it doesn't have to be clearly corroborated and it doesn't even have to be proven true, that that goes too far, that the judge has to just find sufficient corroborating conditions here, which we believe they were. And then it's ultimately up to the jury to decide what is true and what is not in terms of the statements. Yeah, the problem with giving it to the jury, especially if you sanitize the post-arrest statement, though, is you're hiding an absolutely critical part of the evidence, right? Well, and maybe that's an exception to, you know, it's not. The conversation we had about Bruton and the confrontation was brief and it was hypothetical. And so maybe there's – I certainly haven't researched that argument, Judge, and so I may be missing something on that point, and maybe that's an exception to Bruton. And if Mr. Warfield's proffer comes in, so too does the statement that he said Hawkins did it with him the first time. And we can live with that. I mean, we'd much rather have both statements in, in their entirety, and let the jury duke it out. And perhaps that's something I'm just not aware of in the case law. And that may be a perfectly reasonable way to get around, you know, the manipulation that Judge Posner was referring to. Just put it all in front of the jury and let them decide, and that's what we believe should have happened here, and that's why we're asking for a reversal and a remand for further proceedings. Thank you. Okay, thanks very much. Were you appointed, Ms. Jones? I work for the federal defenders, so we are appointed, but I didn't get it. Okay, well, we thank the defenders for taking up the case. Thank you. And we thank Mr. Madden as well. And the court will be in recess until tomorrow morning.